UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                                    Chapter 13
                                                    Case No. 26-40537 KAC

Jenna Ione Kaltved
*fka* Jenna Ione Thompson,

                                                    NOTICE OF HEARING AND
                                                    MOTION FOR RELIEF FROM
                                                    AUTOMATIC STAY

                        Debtor.

---

TO: Jenna Ione Kaltved, TRUSTEE AND OTHER INTERESTED PARTIES

1.      Federal National Mortgage Association ("Fannie Mae" or "Movant"), by its attorneys, moves the court for the relief requested below and gives notice of hearing.

2.      The court will hold a hearing on this motion at 1:30 p.m. on Wednesday March 25, 2026, in Courtroom 8 West, 300 South Fourth Street, Minneapolis, MN 55415 or as soon thereafter as counsel can be heard.

3.      Any response to this motion must be filed and delivered not later than Wednesday March 18, 2026, which is seven days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rules of Bankruptcy Procedure 5005 and Local Rule 1070-1, and is a core proceeding. The petition commencing this Chapter 13 case was filed on February 18, 2026. The case is now pending in this Court.

5.      This motion arises under 11 U.S.C. § 362(d) and Federal Rules of

Bankruptcy Procedure 4001. This motion is filed pursuant to Federal Rules of

Bankruptcy Procedure 9014 and Local Rules 4001-1 and 9013. Movant requests relief

with respect to real property formerly owned by the debtor and her spouse and a

pending eviction action.

6.      Prior to the below-described foreclosure and expiration of the redemption

period, the debtor and spouse were the owners of real property located at 15581 Iodine

Street Northwest, Ramsey, Minnesota 55303, legally described as:  LOT 6, BLOCK 2,

WILDLIFE SANCTUARY SECOND ADDITION, ANOKA COUNTY, Minnesota.

(Dobie Decl. ¶ 5.)

7.      The mortgage that was foreclosed was executed by Douglas Kaltved and

Jenna Kaltved on or about December 28, 2021, and was recorded in the office of the

Anoka County Recorder on December 29, 2021, as Document No. 2351066.002. (*Id.*

¶ 3.)

8.      The debtor and her spouse failed to make payments required by the

mortgage and on July 1, 2025, AmeriHome Mortgage Company LLC completed the

foreclosure of the mortgage by advertisement as evidenced by Sheriff's Certificate of

Sale dated July 1, 2025, and recorded in the office of the County Recorder as

Document No. 2442295.004. (*Id.* ¶ 5.) The sheriff awarded the property to AmeriHome

Mortgage Company, LLC, the high bidder, in the amount of $342,100.00 (*Id.*)

9.      Pursuant to Minnesota Statute 580.23, the debtor, their personal

representatives or assigns, were given a six-month redemption period, which expired

on January 2, 2026. (*Id.* ¶ 5.) The debtor filed her bankruptcy petition on February 18,

2026, the same date as the eviction hearing scheduled in Anoka County Court for

February 18, 2026. (*Id.* ¶ 8.) The bankruptcy filing did not extend the redemption period. Upon expiration of the redemption period, the debtor's interest in the property terminated.

10.    By reason of the foregoing, Movant is entitled to have the automatic stay lifted and vacated so it can complete an eviction action, pursuant to Minnesota Statutes, and so it can take any other action required to secure and protect the property from waste, if vacant.

WHEREFORE, Movant by its undersigned attorney, moves the Court for an Order that the automatic stay provided by 11 U.S.C. Section 362(a) be terminated to permit Movant to proceed with an eviction action, if necessary, and for such other and further relief as may be just and equitable.

Dated:  March 10, 2026

LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P.

By: /s/ Kevin T. Dobie
       Kevin T. Dobie, #388322
       Attorney for Movant
       4500 Park Glen Road, #300
       Minneapolis, MN 55416
       (952) 925-6888
       kevin@minnesotamortgagelaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Chapter 13
Case No. 26-40537 KAC

Jenna Ione Kaltved
*fka* Jenna Ione Thompson,

Debtor.

## DECLARATION IN SUPPORT OF MOTION FOR RELIEF

I, Kevin T. Dobie, being first duly sworn on oath, deposes and states:

1.      I am an attorney at the law firm of Liebo, Weingarden, Dobie & Barbee, P.L.L.P. and hereby make this Declaration in such capacity.

2.      I have reviewed the real property records relating to the debtor's former property located at 15581 Iodine Street Northwest, Ramsey, Minnesota 55303, legally described as follows: LOT 6, BLOCK 2, WILDLIFE SANCTUARY SECOND ADDITION, ANOKA COUNTY, Minnesota.

3.      According to the county records, there is a mortgage dated December 28, 2021, executed by Douglas Kaltved and Jenna Kaltved in the original principal amount of $403,750.00, recorded in the office of the Anoka County Recorder on December 29, 2021, as Document No. 2351066.002. A true and correct copy of the Mortgage is attached to this Declaration as Exhibit A.

4.      The mortgage was subsequently assigned to AmeriHome Mortgage Company, LLC. A true and correct copy of the assignment of mortgage is attached as Exhibit B.

5.      AmeriHome Mortgage Company, LLC foreclosed the mortgage. The County Sheriff's Sale of the property occurred on July 1, 2025, and the Anoka County Sheriff executed a Sheriff's Certificate of Sale in favor of AmeriHome Mortgage

Company, LLC in the amount of $342,100.00. The Sheriff's Certificate of Sale was recorded on July 1, 2025, as Document No. 2442295.004. A true and correct copy of the recorded Sheriff's Certificate of Sale is attached as <u>Exhibit C</u>.

6.       AmeriHome Mortgage Company, LLC assigned its interest in the Sheriff's Certificate of Sale to Federal National Mortgage Association ("Fannie Mae") by assignment recorded on July 28, 2025, as Doc No. 2444474.001. A true and correct copy of the assignment is attached as <u>Exhibit D</u>.

7.       The six-month redemption period expired on January 2, 2026. This bankruptcy petition was filed on February 18, 2026, and did not extend the redemption period.

8.       The Anoka County assessor has estimated that the market value of the property for 2026 is $441,500.00. A true and correct copy of the 2026 Property Tax Statement is attached as <u>Exhibit E</u>.

9.       Fannie Mae commenced an eviction action in Anoka County Court, Tenth Judicial District, as Case No. 02-CV-26-1047, and the court assigned a first appearance hearing on February 18, 2026, at 1:30PMN.

10.       As Fannie Mae and Ms. Kaltved were waiting for the eviction hearing to be called, Ms. Kaltved explained to the eviction court that she was in line at the bankruptcy court's counter waiting for the case number for the bankruptcy case that she had filed on February 18, 2026. Upon confirming that she filed at 1:30pm on February 18, 2026, Fannie Mae's counsel asked the eviction court to place the eviction action against Ms. Kaltved on a temporary bankruptcy hold, and the court did so.

11.       The debtor previously sued AmeriHome Mortgage Company LLC, the entity that completed the foreclosure, in Anoka County, Tenth Judicial District in a

case styled *Jenna Kaltved v. AmeriHome Mortgage Company, LLC*, Case No. 02-CV-24-1270. The Anoka County Court dismissed with prejudice all of Ms. Kaltved's claims related to the mortgage. A true and correct copy of the Order for Dismissal of Plaintiff's Complaint dated September 4, 2024, is attached as <u>Exhibit F</u>.

12.    The debtor is currently suing AmeriHome Mortgage Company LLC and Fannie Mae (and many others) in a separate lawsuit in the United States District Court for the District of Minnesota, assigned Case No. 25-cv-4755 (NEB/JFD). A true and correct copy of the docket is attached as <u>Exhibit G</u>.

13.    This declaration is given in support of the motion of the motion of Federal National Mortgage Association for relief from the automatic stay.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 10, 2026                    By: <u>/s/Kevin T. Dobie</u>

# EXHIBIT A

**ANOKA COUNTY MINNESOTA**

**Document No.: 2351066.002  ABSTRACT**
**12/29/2021 04:21 PM**
**Fees/Taxes in the Amount of: $979.63**
**Pamela J. LeBlanc**
**Anoka County Property Records and Taxation**
**Property Tax Administrator and**
**Recorder/Registrar of Titles**
**Deputy:  amschmit**

(Space Above This Line For Recording Data)

# MORTGAGE

Return To:
**ONWARD FINANCING, LLC**
**6130 BLUE CIRCLE DRIVE, SUITE 200**
**MINNETONKA, MN 55343**

This instrument was prepared by:
**SANDLER LAW GROUP**
**DAVID PEDERSON**
**717 NORTH HARWOOD, SUITE 1600**
**DALLAS, TX 75201**
**214-257-1700**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **December 28, 2021**, together with all Riders to this document.

**(B) "Borrower"** is **DOUGLAS KALTVED AND JENNA KALTVED, MARRIED TO EACH OTHER**. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026**, tel. **(888) 679-MERS**.

**(D) "Lender"** is **ONWARD FINANCING, LLC**. Lender is **LIMITED LIABILITY COMPANY**, organized and existing under the laws of **DELAWARE**.

Form 3024  1/01

Borrower(s) Initials

Lender's address is **6130 BLUE CIRCLE DRIVE, SUITE 200, MINNETONKA, MN 55343**.

**(E) "Note"** means the promissory note signed by Borrower and dated **December 28, 2021**. The Note states that Borrower owes Lender **FOUR HUNDRED THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100** Dollars (U.S. **$403,750.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2052**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ VA Rider
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider
☐ Other (Specify)

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of **ANOKA**:

**LOT 6, BLOCK 2, WILDLIFE SANCTUARY SECOND ADDITION, ANOKA COUNTY, MINNESOTA**

Parcel ID Number:

which currently has the address of: **15581 IODINE STREET NORTHWEST
RAMSEY, MINNESOTA 55303** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the

**MINNESOTA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**    Form 3024 1/01
Page 2 of 10

   Borrower(s) Initials

foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of

Form 3024   1/01

Borrower(s) Initials

Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts

disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld. or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the

Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property. the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would

---

**MINNESOTA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**     Form 3024  1/01
Page 6 of 10

Borrower(s) Initials

be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment

without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage

---

Borrower(s) Initials

loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

---

**MINNESOTA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                     Form 3024  1/01
Page 9 of 10

IDS, Inc. - 30221                                                                           Borrower(s) Initials

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

|                                | -Witness  |                                |  -Witness |
|--------------------------------|-----------|--------------------------------|-----------|
|                                | (Seal)    |                                | (Seal)    |
| DOUGLAS KALTVED                | -Borrower | JENNA KALTVED                  | -Borrower |

**State of** MINNESOTA
**County of** HENNEPIN

This instrument was acknowledged before me on    December 28, 2021            (date) by
**DOUGLAS KALTVED AND JENNA KALTVED, MARRIED TO EACH OTHER** (name(s) of individual(s)).

(Stamp)

COLLEEN T GOULET
Notary Public
State of Minnesota
My Commission Expires
January 31, 2025

(Signature of notarial officer)

Title (and Rank)

My commission expires:

Loan originator (Organization): **ONWARD FINANCING, LLC**; NMLS #:
Loan originator (Individual): **BILL THOMPSON**; NMLS #:

**MINNESOTA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**
Page 10 of 10

**Form 3024   1/01**

IDS, Inc. - 30221

# EXHIBIT B

**ANOKA COUNTY MINNESOTA**

**Document No.: 2400657.001  ABSTRACT**

**10/11/2023 10:01 AM**
**Fees/Taxes in the Amount of: $46.00**
**Pamela J. LeBlanc**
**Anoka County Property Records and Taxation**
**Property Tax Administrator and**
**Recorder/Registrar of Titles**
**Deputy: tlmullen**

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ONWARD FINANCING, LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all liens, and any rights due or to become due thereon to **AMERIHOME MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 1 BAXTER WAY SUITE 300, THOUSAND OAKS, CA 91362, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**.

Said Mortgage was dated 12/28/2021, executed by **DOUGLAS KALTVED AND JENNA KALTVED, MARRIED TO EACH OTHER** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR ONWARD FINANCING, LLC, ITS SUCCESSORS AND ASSIGNS** and filed for record on 12/29/2021 as **Document # 2351066.002**, in the office of the County recorder of <u>ANOKA</u> County, <u>Minnesota</u>.

**Dated this 11th day of October in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ONWARD FINANCING, LLC, ITS SUCCESSORS AND ASSIGNS**

*[signature]*

**MACKENZIE EICHEN**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 11th day of October in the year 2023, by Mackenzie Eichen as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR ONWARD FINANCING, LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*[signature]*

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2026**

**JULIE MARTENS**
Notary Public - State of Florida
Commission #
My Comm. Expires May 22, 2026
Bonded through National Notary Assn.

**Document Prepared By: Jennifer Zak/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: Cenlar FSB C/O Nationwide Title Clearing, LLC, 2100 Alt. 19 North, Palm Harbor, FL 34683
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026

# EXHIBIT C

**ANOKA COUNTY MINNESOTA**

**Document No.: 2442295.004 ABSTRACT**
**07/01/2025 11:11 AM**
**Fees/Taxes in the Amount of: $46.00**
**Pamela J. LeBlanc**
**Anoka County Property Records and Taxation**
**Property Tax Administrator and**
**Recorder/Registrar of Titles**
**Deputy: kziembo**
Transfer Entered

# SHERIFF'S CERTIFICATE OF SALE AND FORECLOSURE RECORD

## MORTGAGE DOCUMENT #2351066.002

DRAFTED BY:
Wilford, Geske & Cook, P.A.
7616 Currell Boulevard, Suite 200
Woodbury, MN 55125
FILE NUMBER: ███████████

SEND TAX STATEMENTS TO:
AmeriHome Mortgage Company, LLC
9726 Old Bailes Road, Ste 200
Fort Mill, SC 29707
Parcel Number: ███████████████

# AFFIDAVIT OF PUBLICATION

STATE OF MINNESOTA )
                    ) ss
COUNTY OF ANOKA

I do solemnly swear that the notice, as per the proof, was published in the edition of the

### Anoka County Union Herald

with the known office of issue being located in the county of:

### ANOKA

with additional circulation in the counties of:

### ANOKA

and has full knowledge of the facts stated below:

(A) The newspaper has complied with all of the requirements constituting qualification as a qualified newspaper as provided by Minn. Stat. §331A.02.

(B) This Public Notice was printed and published in said newspaper(s) once each week, for 6 successive week(s); the first insertion being on 05/16/2025 and the last insertion being on 06/20/2025.

**MORTGAGE FORECLOSURE NOTICES**
Pursuant to Minnesota Stat. §580.033 relating to the publication of mortgage foreclosure notices: The newspaper complies with the conditions described in §580.033, subd. 1, clause (1) or (2). If the newspaper's known office of issue is located in a county adjoining the county where the mortgaged premises or some part of the mortgaged premises described in the notice are located, a substantial portion of the newspaper's circulation is in the latter county.

By: _____

Designated Agent

Subscribed and sworn to or affirmed before me on 06/20/2025

_____
Notary Public



Darlene Marie MacPherson
Notary Public
Minnesota
My Commission Expires Jan. 31, 2029

Rate Information:
(1) Lowest classified rate paid by commercial users for comparable space:
    $999.99 per column inch

Ad ID ▮▮▮▮▮▮

---

NOTICE OF MORTGAGE
FORECLOSURE SALE

NOTICE IS HEREBY GIVEN that default has occurred in the conditions of the following described mortgage:
DATE OF MORTGAGE: December 28, 2021
ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $403,750.00
MORTGAGOR(S):
Douglas Kaltved and Jenna Kaltved,
married to each other
MORTGAGEE: Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Onward Financing, LLC, its successors and assigns
DATE AND PLACE OF RECORDING:
Recorded: December 29, 2021 Anoka County Recorder
Document Number: 2351066.002
ASSIGNMENTS OF MORTGAGE:
And assigned to: AmeriHome Mortgage Company, LLC
Dated: October 11, 2023
Recorded: October 11, 2023 Anoka County Recorder
Document Number: 2400657.001
Transaction Agent: Mortgage Electronic Registration Systems, Inc.
Transaction Agent Mortgage Identification Number: ▮▮▮▮▮▮
Lender/Broker/Mortgage Originator: Onward Financing, LLC
Residential Mortgage Servicer: Cenlar FSB
COUNTY IN WHICH PROPERTY IS LOCATED: Anoka
Property Address:
15581 Iodine Street Northwest, Ramsey, MN 55303
Tax Parcel ID Number: ▮▮▮▮▮▮
LEGAL DESCRIPTION OF PROPERTY:
Lot 6, Block 2, Wildlife Sanctuary Second Addition, Anoka County, Minnesota
AMOUNT DUE AND CLAIMED TO BE DUE AS OF DATE OF NOTICE: $440,665.35
THAT all pre-foreclosure requirements have been complied with; that no action or proceeding has been instituted at law or otherwise to recover the debt secured by said mortgage, or any part thereof;
PURSUANT to the power of sale contained in said mortgage, the above-described property will be sold by the Sheriff of said county as follows:
DATE AND TIME OF SALE: July 01, 2025 at 10:00 AM
PLACE OF SALE:
County Sheriff's office, 13301 Hanson Boulevard NW, Andover, Minnesota
to pay the debt secured by said mortgage and taxes, if any, on said premises and the costs and disbursements, including attorney fees allowed by law, subject to redemption within six (6) months from the date of said sale by the mortgagor(s), their personal representatives or assigns.
If the Mortgage is not reinstated under Minn. Stat. §580.30 or the property is not redeemed under Minn. Stat. §580.23, the Mortgagor must vacate the property on or before 11:59 p.m. on January 02, 2026, or the next business day if January 02, 2026 falls on a Saturday, Sunday or legal holiday.
Mortgagor(s) released from financial obligation: NONE
**THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS ACTION.
THE TIME ALLOWED BY LAW FOR REDEMPTION BY THE MORTGAGOR, THE MORTGAGOR'S PERSONAL REPRESENTATIVES OR ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A JUDICIAL ORDER IS ENTERED UNDER MINNESOTA STATUTES, SECTION 582.032, DETERMINING, AMONG OTHER THINGS, THAT THE MORTGAGED PREMISES ARE IMPROVED WITH A RESIDENTIAL DWELLING OF LESS THAN FIVE UNITS, ARE NOT PROPERTY USED IN AGRICULTURAL PRODUCTION, AND ARE ABANDONED.
DATED: May 13, 2025
MORTGAGEE: AmeriHome Mortgage Company, LLC
Wilford, Geske & Cook, P.A.
Attorneys for Mortgagee
7616 Currell Boulevard, Suite 200
Woodbury, MN 55125
(651) 209-3300
File Number: ▮▮▮▮▮▮

Published in the
Anoka County Union-Herald
May 16, 23, 30,
June 6, 13, 20, 2025

## Affidavit of Service

State of Minnesota
County of Ramsey
(County where Affidavit signed)

David J. Lunda, Being duly sworn, on oath says: that on the 19th day of May, 2025 at 10:54am he served 3 copies of the following: Notice of Mortgage Foreclosure Sale; Homestead Designation Notice; Foreclosure-Advice to Tenants; Help for Homeowners in Foreclosure Notice; Notice of Redemption Rights on Property Occupant, Douglas Kaltved, personally at 15581 Iodine Street Northwest, Ramsey 55303 , County of Anoka, State of Minnesota, by handing to and leaving with property occupant Douglas Kaltved a true and correct copy thereof.

Subscribed and Sworn Before Me this
19th Day of May, 2025 by David J. Lunda

Notary Public

RUTH ANN ELIZABETH LUNDA
Notary Public
State of Minnesota
My Commission Expires
January 31, 2026

Drafted By:
Twin City Process Service, LLC
5416 Jefferson Court
St. Paul MN 55110

Wilford, Geske & Cook P.A.
File #

Affidavit of Service

---

State of Minnesota
County of Ramsey
(County where Affidavit signed)

David J. Lunda, Being duly sworn, on oath says: that on the 19th day of May, 2025
at 10:54am he served the following: Notice of Mortgage Foreclosure Sale;
Homestead Designation Notice; Foreclosure-Advice to Tenants; Help for
Homeowners in Foreclosure Notice; Notice of Redemption Rights on Property
Occupant, Jenna Kaltved, personally at her usual place of abode 15581 Iodine
Street Northwest, Ramsey 55303  , County of Anoka, State of Minnesota, by
handing to and leaving with property occupant Douglas Kaltved, resident, a person
of suitable age and discretion residing therein a true and correct copy thereof.

Subscribed and Sworn Before Me this
_____Day of May, 2025 by David J. Lunda

Notary Public

RUTH ANN ELIZABETH LUNDA
Notary Public
State of Minnesota
My Commission Expires
January 31, 2026

Drafted By:
Twin City Process Service, LLC
5416 Jefferson Court
St. Paul MN 55110

Wilford, Geske & Cook P.A.
File #

SHERIFF'S CERTIFICATE OF SALE AND FORECLOSURE RECORD

## SHERIFF'S CERTIFICATE OF SALE

STATE OF MINNESOTA

COUNTY OF ANOKA

I, Brad Wise, Sheriff of the County of Anoka, State of Minnesota, do hereby certify that pursuant to the printed Notice of Foreclosure sale hereto attached and the power of sale contained in the following described mortgage:

DATE OF MORTGAGE: December 28, 2021

MORTGAGOR(S): Douglas Kaltved and Jenna Kaltved, married to each other

MORTGAGEE: Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Onward Financing, LLC, its successors and assigns, its successors and assigns

DATE AND PLACE OF RECORDING:
Recorded: December 29, 2021 Anoka County Recorder
Document Number: 2351066.002

ASSIGNMENTS OF MORTGAGE:
And assigned to: AmeriHome Mortgage Company, LLC
Dated: October 11, 2023
Recorded: October 11, 2023 Anoka County Recorder
Document Number: 2400657.001

Transaction Agent: Mortgage Electronic Registration Systems, Inc.
Transaction Agent Mortgage Identification Number:
Lender/Broker/Mortgage Originator: Onward Financing, LLC
Residential Mortgage Servicer: ServiceMac, LLC

COUNTY IN WHICH PROPERTY IS LOCATED: Anoka
Property Address: 15581 Iodine Street Northwest, Ramsey, MN 55303
Tax Parcel ID Number:

I did, at the time and place in said notice specified:

DATE AND TIME OF SALE: July 01, 2025 10:00 AM

PLACE OF SALE: County Sheriff's office, 13301 Hanson Boulevard NW, Andover, Minnesota

offer for sale and sell at public auction to the highest bidder and best bidder, the tract of land described as follows, to wit:

Lot 6, Block 2, Wildlife Sanctuary Second Addition, Anoka County, Minnesota

and did strike off and sell the same to:  AmeriHome Mortgage Company, LLC

for the sum of:  $342,100.00

said purchaser being the highest bidder and said sum being the highest and best bid offered therefore and that said sale was in all respects openly, honestly, fairly, and lawfully conducted, and the time allowed for redemption by the mortgagor(s), their personal representatives or assigns is six (6) months from the date of said sale.

Interest rate on the date of sale: 3.50000%

IN TESTIMONY WHEREOF, I have hereunto set my hand on July 01, 2025.

STATE OF MINNESOTA

COUNTY OF ANOKA

Brad Wise

By _____ , Deputy

On July 01, 2025, before me personally appeared **Deputy Lucas Christofferson**, known to be the _____**Deputy**_____ Sheriff of said County, and the person described in and who executed the foregoing instrument, and acknowledged that he/she executed the same as his/her free act and deed as such _____**Deputy**_____ Sheriff.

ELIZABETH ANNE COFFING
Notary Public
Minnesota
My Commission Expires January 31, 2027

## AFFIDAVIT OF MILITARY STATUS

STATE OF MINNESOTA

COUNTY OF WASHINGTON

The below signed being first duly sworn on oath says that he/she knows the facts relating to the military status of Jenna Kaltved and Douglas Kaltved owner(s) of the mortgaged premises described in the foregoing Sheriff's Certificate of mortgage foreclosure sale thereof, that said person(s) was not in the military or naval service of the United States at the time of this affidavit, or during the twelve (12) months preceding such sale, as appears from facts known at the time of this affidavit.

Dated: 6-30-25

Eric Cook, Michael Sauer, Orin Kipp
ATTORNEYS FOR WILFORD, GESKE & COOK, P.A.

Signed or attested before me on 6-30-25, by Orin Kipp.

Notary Public

Legal Assistant
Title (and rank)
My commission expires: 1-31-27

MACKENZIE MICHELLE PARRANTO
Notary Public-Minnesota
My Commission Expires Jan 31, 2027

## AFFIDAVIT OF COSTS AND DISBURSEMENTS

STATE OF MINNESOTA

COUNTY OF WASHINGTON

The below signed being first duly sworn on oath says that he/she is the attorney foreclosing the mortgage described in the printed notice of mortgage foreclosure sale hereto attached; that the following is a detailed bill of the costs and disbursements of said foreclosure, and that the same have been absolutely and unconditionally paid or incurred therein, to wit:

| | |
|---|---|
| $2,375.00 | Attorney's Fee for foreclosing said mortgage |
| $1,108.80 | Publication of Notice of Mortgage Foreclosure |
| $96.00 | Recording Costs |
| $100.00 | Sale Fee |
| $130.00 | Service Costs |
| $225.00 | Title Search |
| $4,034.80 | Total |

Dated: ___6·30·25___

_____
Eric Cook, Michael Sauer, Orin Kipp
ATTORNEYS FOR WILFORD, GESKE & COOK, P.A.

Signed or attested before me on 6·30·23, by Orin Kipp.

_____
Notary Public

_____
Title (and rank)

My commission expires: 1·31·27

MACKENZIE MICHELLE PARRANTO
Notary Public-Minnesota
My Commission Expires Jan 31, 2027

## AFFIDAVIT OF COMPLIANCE

STATE OF MINNESOTA

COUNTY OF WASHINGTON

The below signed being first duly sworn on oath, states that:

1. The Foreclosure Prevention Counseling Notice has been delivered in compliance with Minnesota Statutes Section 580.021.

2. The Notice of Sale has been delivered in compliance with Minnesota Statutes Section 580.04.

3. The Foreclosure Advice Notice to Owners ("Help for Homeowners in Foreclosure") and the Notice of Redemption Rights have been delivered in compliance with Minnesota Statutes Section 580.041.

4. If the property is a one-to-four family dwelling and is occupied by one or more tenants as a residence, the Foreclosure: Advice to Tenants has been delivered in compliance Minnesota Statutes Section 580.042.

5. The Farmer Lender Mediation Notice has been delivered in compliance with Minnesota Statutes Section 582.039, if applicable.

6. The Homestead Designation Notice has been delivered in compliance with Minnesota Statutes Section 582.041, if applicable.

7. The Agricultural Designation Notice has been delivered in compliance with Minnesota Statutes Section 582.042, if applicable.

Dated: 6-30-25

Eric Cook, Michael Sauer, Orin Kipp
ATTORNEYS FOR WILFORD, GESKE & COOK, P.A.

Signed or attested before me on 6-30-25, by Orin Kipp.

Notary Public

Title (and rank)
My commission expires: 1-31-27

MACKENZIE MICHELLE PARRANTO
Notary Public-Minnesota
My Commission Expires Jan 31, 2027

File Number: ███

# EXHIBIT D

**ANOKA COUNTY MINNESOTA**

**Document No.: 2444474.001  ABSTRACT**

**07/28/2025 10:24 AM**
**Fees/Taxes in the Amount of: $46.00**
**Pamela J. LeBlanc**
**Anoka County Property Records and Taxation**
**Property Tax Administrator and**
**Recorder/Registrar of Titles**
**Deputy:  nctenold**
**Transfer Entered**
**Delinquent Taxes Certified**

**Certificate of Real Estate Value Not Required**

---

## ASSIGNMENT OF SHERIFF'S CERTIFICATE OF SALE

Grantor: AmeriHome Mortgage Company LLC

Grantee: Federal National Mortgage Association, its successors and assigns

DRAFTED BY:
Wilford, Geske & Cook P.A.
7616 Currell Blvd; Ste 200
Woodbury, MN 55125-2296
FILE NUMBER:

SEND TAX STATEMENTS TO:
Federal National Mortgage Association, its successors and assigns
1100 15th Street NW
Washington, DC 20005
Parcel Number:

ASSIGNMENT OF SHERIFF'S CERTIFICATE OF SALE

STATE DEED TAX DUE HEREON: $ EXEMPT
This deed is exempt from State Deed Tax pursuant to Minnesota Statutes 287.22(6)

KNOW ALL MEN BY THESE PRESENTS, that AmeriHome Mortgage Company, LLC a limited liability company, party of the first part, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, to it in hand paid by Federal National Mortgage Association, its successors and assigns, party of the second part, receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over on to the party of the second part, its successors and assigns, forever that certain Sheriff's Certificate of Sale, executed by the Sheriff of Anoka County, State of Minnesota, on July 1, 2025, and filed for record with the County Recorder on July 1, 2025, as Document No.2442295.004, upon the following described real property, to wit:

Property Address: 15581 Iodine Street Northwest, Ramsey, MN 55303

Lot 6, Block 2, Wildlife Sanctuary Second Addition, Anoka County, Minnesota

And the party of the first part, in further consideration of payment of the above sum to it by party of the second part, for itself and its successors, does covenant with party of the second part, its successors and assigns, that it has not made, done, executed, or suffered any act or thing whatsoever whereby the premises described in the Sheriff's Certificate of Sale above mentioned, or any part thereof, now or at any time hereafter, shall or may be imperiled, charged, or encumbered in any manner whatsoever.

Total consideration is less than $3000.00.

Dated: July _2 ( / , 2025

AmeriHome Mortgage Company, LLC by ServiceMac, LLC its appointed attorney in fact

By: _____
Thomas Abballe

Its _Vice President_____

STATE OF South Carolina

COUNTY OF Lancaster

This instrument was acknowledged before me on July _24_ , 2025 by

Thomas Abballe _____ as Vice President _____ of

ServiceMac, LLC as service for AmeriHome Mortgage Company, LLC its appointed attorney in fact a limited liability company under the laws of the state of Delaware, on behalf of the limited liability company.

NOTARIAL SEAL OR STAMP
KIRSTIN R. REW
Notary Public-State of South Carolina
My Commission Expires
August 05, 2031

Kristin PRew
Notary Public

# EXHIBIT E

**Anoka County**
Property Records and Taxation
2100 3rd Avenue
Anoka, MN 55303
(763) 323-5400
www.anokacountymn.gov

**ANOKA COUNTY**

**TAX STATEMENT** 2026

**Property ID Number:** ▓▓▓▓

**Taxpayer(s):**
FEDERAL NATIONAL MTG ASSOCIATION
1100 15TH ST NW
WASHINGTON DC 20005

**Property Description:**
LOT 6 BLOCK 2 WILDLIFE SANCTUARY 2ND ADD

**Property Address:**
15581 IODINE ST NW

TCA: ▓
Owner(s): FEDERAL NATIONAL MTG ASSOCIATION

**$$$ REFUNDS?**

## 2025 Values for Taxes Payable in

**Step 1**

### VALUES & CLASSIFICATIONS

| Taxes Payable Year: | 2025 | 2026 |
|---|---|---|
| Estimated Market Value: | 424,200 | 441,500 |
| Homestead Exclusion: | 0 | 0 |
| Taxable Market Value: | 424,200 | 441,500 |
| New Improvements: | | |
| Property Classification: | RES NON HSTD | RES NON HSTD |

Sent in March 2025

**Step 2**

### PROPOSED TAX

| Proposed Tax: | 4,999.04 |
|---|---|

Sent in November 2025

**Step 3**

### PROPERTY TAX STATEMENT

| First half Taxes: | 2,506.49 |
|---|---|
| Second half Taxes: | 2,506.49 |
| Total Taxes Due in 2026 : | 5,012.98 |

You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.

| Taxes Payable Year: | | 2025 | 2026 |
|---|---|---|---|
| 1. Use this amount on Form M1PR to see if you are eligible for a homestead credit refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. ☐ | | | 0.00 |
| 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. | | 0.00 | |
| **Property Tax and Credits** | | | |
| 3. Property taxes before credits | | 4,805.44 | 4,988.96 |
| 4. Credits that reduce property taxes | A. Agricultural and rural land credits | 0.00 | 0.00 |
| | B. Other credits | 0.00 | 0.00 |
| 5. PROPERTY TAXES AFTER CREDITS | | 4,805.44 | 4,988.96 |
| **Property Tax by Jurisdiction** | | | |
| 6. County | A. General county levy | 1,283.00 | 1,402.32 |
| | B. Regional rail authority | 0.00 | 0.00 |
| 7. County/municipal public safety system | | 0.00 | 3.96 |
| 8. City or town | | 1,960.40 | 2,037.26 |
| 9. State general tax | | 0.00 | 0.00 |
| 10. School district 0011 | A. Voter approved levies | 680.66 | 681.42 |
| | B. Other local levies | 729.10 | 708.00 |
| 11. Special taxing districts | A. Metropolitan special taxing districts | 81.74 | 84.80 |
| | B. Other special taxing districts | 70.54 | 71.20 |
| | C. Tax increment | 0.00 | 0.00 |
| | D. Fiscal disparity | 0.00 | 0.00 |
| 12. Non-school voter-approved referenda levies | | 0.00 | 0.00 |
| 13. Total property tax before special assessments | | 4,805.44 | 4,988.96 |
| **Special Assessments** | | | |
| 14. Special Assessments | A. Solid waste management charge | 24.02 | 24.02 |
| | B. All other special assessments | 0.00 | 0.00 |
| | C. Contamination tax | 0.00 | 0.00 |
| 15. TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS | | 4,829.46 | 5,012.98 |

---

## 2nd Half Payment Stub - Payable 2026

**TO AVOID PENALTY PAY ON OR BEFORE OCTOBER 15, 2026**

**Property ID Number:** ▓▓▓▓

PLEASE READ BACK OF STATEMENT FOR IMPORTANT INFORMATION

If your address has changed please check this box ☐ and show the change on the back of this stub

**Taxpayer(s):**
FEDERAL NATIONAL MTG ASSOCIATION
1100 15TH ST NW
WASHINGTON DC 20005

| Total Property Tax for 2026: $ | 5,012.98 |
|---|---|
| Second half Payment Due: $ | 2,506.49 |
| Second half Penalty Due: $ | 0.00 |
| Second half Payment Made: $ | 0.00 |
| Second half Due with Penalty: $ | 2,506.49 |

OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID BY ESCROW COMPANY: SERVICEMAC, LLC

**Make Checks Payable To:**
Anoka County
Property Records and Taxation
2100 3rd Avenue
Anoka, MN 55303

DETACH HERE AND RETURN THIS STUB WITH YOUR SECOND HALF PAYMENT.

---

## 1st Half Payment Stub - Payable 2026

**TO AVOID PENALTY PAY ON OR BEFORE MAY 15, 2026**

**Property ID Number:** ▓▓▓▓

PLEASE READ BACK OF STATEMENT FOR IMPORTANT INFORMATION

If your address has changed please check this box ☐ and show the change on the back of this stub

**Taxpayer(s):**
FEDERAL NATIONAL MTG ASSOCIATION
1100 15TH ST NW
WASHINGTON DC 20005

| Total Property Tax for 2026: $ | 5,012.98 |
|---|---|
| First half Payment Due: $ | 2,506.49 |
| First half Penalty Due: $ | 0.00 |
| First half Payment Made: $ | 0.00 |
| First half Due with Penalty: $ | 2,506.49 |

OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID BY ESCROW COMPANY: SERVICEMAC, LLC

**Make Checks Payable To:**
Anoka County
Property Records and Taxation
2100 3rd Avenue
Anoka, MN 55303

DETACH HERE AND RETURN THIS STUB WITH YOUR FIRST HALF PAYMENT.

# EXHIBIT F

**STATE OF MINNESOTA**                                    **DISTRICT COURT**

**COUNTY OF ANOKA**                                       **TENTH JUDICIAL DISTRICT**

---

Jenna Kaltved,

               Plaintiff,                **ORDER FOR DISMISSAL**

    vs.                                **OF PLAINTIFF'S COMPLAINT**

AmeriHome Mortgage Company,
LLC,

                                Court File No: ███████

              Defendant.

---

       The above-captioned matter came on before the Honorable Jenny Walker Jasper, Anoka County District Court, July 25, 2024, on Defendant's Rule 12 Motion to Dismiss.

       Plaintiff Jenna Kaltved appeared virtually representing herself pro se. Defendant AmeriHome Mortgage Company ("AmeriHome") appeared through its attorney, Addison Morgan, Esq.

       Now, therefore, based upon the files, records and proceedings herein, the Court makes the following:

**ORDER**

1.    Defendant AmeriHome's motion to dismiss Plaintiff's Complaint for failing to state a claim on which relief can be granted is **GRANTED**.

2.    Plaintiff's Complaint is **dismissed with prejudice**.

3.    The attached memorandum of law is incorporated herein by reference.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

                             **BY THE COURT**:

                             _____

                             Jenny Walker Jasper
                             Judge of District Court

## <u>MEMORANDUM OF LAW</u>

### Statement of Facts

Rule 12.02(e) motions turn solely on whether the complaint states a claim upon which

relief may be granted. See *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn.

2000). For the purposes of Defendant's Rule 12 motion to dismiss, the Court accepts as true and

will use the facts alleged in Plaintiff's Verified Complaint filed on March 13, 2024.

On December 28, 2021, Plaintiff entered into a written mortgage agreement. (Complaint

at ¶ 6). Plaintiff acknowledges that this contract was with Onward Financing, which later sold

the right to collect on the debt to AmeriHome Mortgage. (Ex. 1, Pg. 2). Plaintiff states that,

relying on Generally Accepted Accounting Principles (GAAP) and Financial Accounting

Standards Board (FASB) principles, she "conducted due diligence to ensure fairness, equal

consideration and transparency in the alleged loan transaction." (Complaint at ¶ 7).

Plaintiff sent a Notice of Conditional Acceptance and Offer to Perform, along with an

Affidavit of Facts: Verification and Validation of Debt to Defendant on September 25, 2023. (*Id.*

at ¶ 8). The Notice was incorporated with Plaintiff's Complaint as Exhibit 1. Plaintiff sought

comprehensive loan and account information, requesting that the Defendant verify the validity,

origin, and ownership of the alleged debt and provide evidence of equal and adequate

consideration in the transaction. (*Id.* at ¶ 10, 22). It purported to give Defendant "a reasonable

amount of time" to provide the requested information. (*Id.* at ¶ 11).

On November 7, 2023, Plaintiff received Defendant's initial response containing a

photocopy of the alleged financial agreement in question along with a copy of the transaction

history of Plaintiff's account. (*Id.* at ¶ 12, 24). Plaintiff, not believing Defendant's documentation

was sufficient, sent a Mortgage Follow Up Letter on December 1, 2023, seeking "full disclosure

of all material facts of the loan transaction." (*Id*. at ¶ 14, 27). On December 18, 2023, Plaintiff

received a Mortgage Statement from Defendant. (*Id*. at ¶ 15). Subsequently, on January 5, 2024,

Plaintiff received an Acknowledgment Letter from Defendant. (*Id*. at ¶ 16).

Plaintiff was not satisfied with the loan documentation information provided and initiated

this action against Defendant in part questioning the consideration received as part of their

contractual relationship with the original mortgage holder, Onward Financing.

## Analysis

### I.     Standard of Review for Motion to Dismiss for Failure to State a Claim on which Relief may be Granted.

Defendant moves the Court for dismissal of Plaintiff's Complaint for failure to state a

claim on which relief may be granted pursuant to Minn. R. Civ. P. 12.02(e). Pleadings must

"contain a short plain statement of the claim showing that the pleader is entitled to relief and a

demand for judgment for the relief sought.

The threshold showing plaintiffs must make "in order to survive a motion to dismiss

under [12.02(e)] is minimal." *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003). A

reviewing court considers a motion to dismiss for failure to state a claim, it must "consider only

the facts alleged in the complaint, accepting those facts as true and must construe all reasonable

inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663

N.W.2d 550, 553 (Minn. 2003).

A complaint will be dismissed only "if it appears to a certainty that no facts, which could

be introduced consistent with the pleading, exist which would support granting the relief

demanded." *Bahr v. Capella University*, 788 N.W.2d 76, 80 (Minn. 2010). Therefore, a claim

will only be sufficient against a motion to dismiss for failure to state a claim if it is possible on

any evidence which might be produced, consistent with the pleader's theory, to grant the relief

demanded. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Legal conclusions

in a complaint are not binding on the court. See *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226,

235 (Minn. 2008).

Plaintiff, through her Complaint, proceeds under numerous causes of action: breach of

the implied covenant of good faith and fair dealing (Count I); breach of implied contract from

acquiescence (Count II); lack of consideration (Count III); failure to prove bona fide loss (Count

IV); lack of bona fide holder status (Count V); unfair business practice (Count VI); estoppel

(Count VII); and removal, release, and revocation of lender's rights, titles, and interest (Count

VIII). The question is whether Plaintiff has supplied sufficient facts which, when viewing them

in the light most favorable to her, support the relief requested under those claims.

## II.   Plaintiff's Standing and Availability of Relief for the Causes of Action Stated in the Complaint.

The claims forwarded by Plaintiff, while separate, hinge on whether she has standing to

bring this action. Any failure on the part of Defendant to provide her with full disclosures or

verifications or to respond to and involve her in the transfer of the mortgage, leading to a breach

the parties' contract among other things, depends on Plaintiff's nexus to the debt transfer.

Plaintiff's allegations are based upon her questioning the validation of the nature of the

assignment of the debt between Onward Financing and AmeriHome Mortgage. See Exhibit 1.

A plaintiff may have standing in two ways: "either the plaintiff has suffered some 'injury-

in-fact', or the plaintiff is the beneficiary of some legislative enactment granting standing."

*Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007) (citing *Snyder's Drug Stores, Inc. v.*

*Minn. State Bd. of Pharmacy*, 221 N.W.2d 162, 165 (Minn. 1974)). To demonstrate an "injury-

in-fact," the plaintiff must show "a concrete and particularized invasion of a legally protected

interest." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff bringing a show-me-the-note claim generally argues that, because the entity that holds their mortgage is not the same as the entity that holds their note, the mortgage on the home or the foreclosure of that mortgage is invalid. This type of argument has been summarily dismissed throughout Minnesota caselaw, including by the Minnesota Supreme Court in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009).

In *Jackson*, the Minnesota Supreme Court held that "any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement." 770 N.W.2d at 500. The court reaffirmed the principle that "legal and equitable title can be separated" and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, "[i]t is a matter between them alone, and does not concern the mortgagor," and such a transaction does "not affect the interests of the mortgagor, and he could not object." *Id.*

Here, Plaintiff's Complaint and the allegations therein appear to proceed under this "show-me-the note" theory of relief. On page 5 in Exhibit 1 of her Complaint, the Notice of Conditional Acceptance and Offer to Perform, she explicitly requests the "complete original agreement/note with a wet ink signature in order to perform… and any copy of a note sent due to an inability to locate the original note with a wet ink signature would be a forgery." This defense, that Defendant must show that they actually have the right to collect the amounts owed under the Note, falls under the exact "show-me-the-note" reasoning that has been resoundingly rejected by the courts. Plaintiff claims that Defendant did not verify the validity, origin and ownership of the alleged debt or provide evidence of valid consideration in the transaction, which should effectively result in injunctive relief via recission of the mortgage. Each of Plaintiff's claims

stem from a perceived right to demand information and desire to call into question the debt's validity.

The fact that Plaintiff sent various letters to Defendant seeking information did not legally obligate the latter to provide that information or perform in any other manner. The parties were never in privity of contract as evidenced by Exhibit 1. Plaintiff and Onward Financing, LLC executed the original Mortgage and Note and Defendant is not shown to be signatory to those agreements. The responses given by Defendant communicating current ownership of the Note, while unsatisfactory to Plaintiff, did not amount to any formation of a contract and were not deficient because Defendant was not under a duty to provide anything further.

The extent of the injuries Plaintiff alleges she has suffered are "potential negative credit consequences," and that "Defendant's actions have caused uncertainty of the true nature of the transaction, negatively impacting the Plaintiff." (See Complaint at ¶¶ 33, 39, 45, 51, 57, and 61). These are not cognizable injuries; the alleged harm is too remote and broadly defined. She was not a party to the transfer of the Mortgage and Note. Plaintiff has not demonstrated any real, concrete injury outside of what *might* happen in the future. In the absence of evidence indicating otherwise, Plaintiff may not challenge the transfer and she has not provided the Court with a valid theory of relief in which to proceed.

For these reasons and those listed below, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

III.   **Plaintiff's Count 1 - Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In Minnesota, every contract includes with it an "implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other's party's performance of the contract. *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn.

1995) (quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). To establish a

violation of this covenant, a party must establish bad faith by demonstrating that the adverse

party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Central

v. Flagship Properties LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (citing *Sterling Capital

Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

The implied covenant of good faith and fair dealing carries with it the need for a valid,

enforceable contract to exist in order to be actionable. To violate this standard, there must be an

agreement between two or more parties which establishes a duty to perform for one party, and

the other unjustifiable hinders them from doing so. A claim for breach of the implied covenant of

good faith and fair dealing is not an independent cause of action. Plaintiff has also not

sufficiently shown what performance is being hindered and how. As her contract was with

Onward Financing, not AmeriHome Mortgage, she cannot contest that Defendant has exhibited

bad faith in refusing to perform or frustrating contractual duties and this cause of action fails.

## IV.    Plaintiff's Count II - Breach of Implied Contract from Acquiescence.

Where evidence fails to demonstrate that an express agreement was formed, Minnesota

law provides that a contract may be implied "from the circumstances or acts of the parties."

*Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*, 225 N.W.2d 261, 263 (Minn. 1975).

The existence of an implied contract is a "question to de determined by the trier of fact as an

inference of facts to be drawn from the conduct and statements of the parties." *Roberge v.

CambridgeCo-Op. Creamery*, 79 N.W.2d 142 (1956).

A contract is formed when two or more parties exchange bargained-for promises,

manifest mutual assent to the exchange, and support their promises with consideration. *Medical

*Staff of Avera Marshall Regional Medical Center v. Avera Marshall*, 857 N.W.2d 695, 701

(Minn. 2014).

Here, there was no express written or otherwise agreed-upon contract between the parties.

The only extrinsic evidence of the party's actions that Plaintiff provides lending to her argument

of an implied contract are her assertions that she and Defendant "engaged in private

correspondence" whereby AmeriHome "implicitly agreed to cooperate" with her requests. There

were no bargained-for promises exchanged, nor mutual assent to any exchange. Further, Plaintiff

has not shown that there was any consideration to support the parties' supposed promises,

despite her allegation that the agreement between AmeriHome Mortgage and Onward Financing

should be void for the same reason. Defendant's mere indication that that it would provide

Plaintiff with some information related to the loan transaction with Onward Financing falls well

short of establishing an implied contract.

**V.      Plaintiff's Count III - Lack of Consideration**

Consideration is an essential component to the formation of a valid contract. It "requires

that one party to a transaction voluntarily assume an obligation on the condition of an act or

forbearance by the other party." *Id*. (quoting *U.S. Sprint Commc'ns Co., Ltd. v. Comm'r of*

*Revenue*, 578 N.W.2d 752, 754 (Minn. 1998)).

In order to challenge a contract for lack of consideration, a plaintiff is required to

establish the elements of a binding contract, whether that agreement is express or implied.

Plaintiff was not a party to the contract between Defendant and Onward Financing and thus

cannot challenge it for lack of consideration. Plaintiff additionally has not established a contract

being formed with Defendant, and even if she had, there was no reciprocal promise on her end

for the exchange of information requested. Therefore, Plaintiff's claim fails.

**VI.    Plaintiff's Count IV - Failure to Prove Bona Fide Loss and Count V – Lack of Bona Fide Holder Status.**

These claims purport that Defendant lacks the "bona fide holder status" that is necessary for a loan servicer to enforce a debt under a Mortgage and evidenced by a Note.

This fact may be determined through publicly available resources, which the Court has the access and ability to reference. *See Eagan Econ. Dev. Auth. v. U-Haul Co. of Minnesota*, 787 N.W.2d 523, 530 (Minn. 2010) ("… We have taken judicial notice of public records and have said we have the inherent power to look beyond the record where the orderly administration of justice recommends it.") (internal citations omitted). Additionally, the Minnesota Supreme Court has formally recognized the Mortgage Electronic Registration System ("MERS"), a resource wherein members, which include originators, lenders, servicers, and investors, to assign home mortgage loans and other related interests without having to record each transfer in the local land recording offices where real estate securing the mortgage is located. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

County Recorders maintain official real estate documents for properties in their jurisdiction and their records are made publicly accessible. Further, MERS is an accepted servicer which has a free program called ServicerID which allows someone to figure out, using the property's Mortgage Identification Number (MIN), the current servicer of the Note. Therefore, the Court takes judicial notice of: (1) the Assignment of Mortgage recorded in the Office of the County Recorder of Anoka County, and (2) MERS and the MERS ServicerID database. As such, the Court finds that Defendant AmeriHome Mortgage is a valid assignee and is the servicer of the Mortgage, and the MIN linked to the Mortgage on MERS is the same as described on the Mortgage itself. For these reasons, both Plaintiff's claims IV and V fail.

## VII.   Plaintiff's Count VI - Unfair Business Practices.

Minnesota's Deceptive Trade Practices Act (DTPA) provides that a person, or in this case, a business, engages in a deceptive trade practice when, in the course of business, vocation, or occupation, they, in relevant part:

(1) pass off goods or services as those of another;
(2) cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
(5) represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
(13) engage in (i) unfair methods of competition, or (ii) unfair or unconscionable acts or practices, or
(14) engage in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. 325D.44, subds. 1-3, 5, 13-14.

Plaintiff's claim that Defendant, a loan servicer, has engaged in duplicitous and otherwise unfair business practices is an action under the DTPA, which generally prohibits the act of passing off goods and services and there own and creating confusion as to their origin. That is not the case here. Plaintiff's allegations that Defendant failed to respond adequately, in her opinion, to her inquires and to provide transparency regarding the Mortgage and the Note, do not create the type of confusion contemplated by the statute.

There appears to be no doubt as to the source, connection, or other material facts regarding the Mortgage resulting from the agreement between Defendant and Onward Financing. That alleged uncertainty Plaintiff experienced upon learning of their contract is not enough, particularly when the Assignment of Mortgage was recorded in the Office of the County Recorder of Anoka County, which is publicly available, and the freely accessible MERS

ServicerID database provides the name of the current owner and servicer of a promissory note

for a property. Transfers of Mortgages and Notes are readily allowed by law and there is no

evidence that it was performed in such a way that was competitively unfair or unconscionable to

her as the mortgagor. Plaintiff supposedly being unaware of a transaction involving a loan in her

name does not amount to unfair business practices.

**VIII.   Plaintiff's Count VII – Estoppel.**

Promissory estoppel is an equitable doctrine that implies a contract in law exists where

none exists in fact. *Martens v. Minnesota Min. & Mfg. Co*., 616 N.W.2d 732, 746 (Minn. 2000).

To establish promissory estoppel, a claimant must demonstrate that (1) the promisor made a clear

and definite promise, (2) the promisor intended to induce reliance and such reliance occurred,

and (3) the promise must be enforced to prevent injustice. *See Olson v. Synergistic Techs. Bus.*

*Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001).

Through this claim, Plaintiff seeks for the Court to, in the interests of justice, intervene

and establish that a contract exists in law with Defendant where none existed in fact. The Court

finds no injustice to remedy here. Defendant AmeriHome was acting within their rights and

duties as a loan servicer, and their correspondence with Plaintiff do not contain any clear,

definite promises which they intended to, and Plaintiff did, rely on. It has already been

determined that the elements of an enforceable contract have not been demonstrated. Plaintiff

essentially asks for an order finding that, because the information she received from Defendant,

which they would not legally obligated to supply, was unsatisfactory to her, they should be

bound to that and that a duty should be created to compel Defendant to provide more. The Court

declines to enforce such a contract.

IX.    **Plaintiff's Count VIII - Removal, Release, and Revocation of Lender's Rights, Titles, and Interest.**

This claim falls under Plaintiff's previous assertions of lack of adequate consideration, good faith, and fair dealing, and the uncertainty created by the transaction. These allegations are deficient and do not form a justifiable basis for recission of the mortgage. All of Plaintiff's claims made in the Complaint shall hereby be dismissed.

**JWJ**

# EXHIBIT G

# U.S. District Court
## U.S. District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:25-cv-04755-NEB-JFD

Kaltved et al v. Wise et al
Assigned to: Judge Nancy E. Brasel
Referred to: Magistrate Judge John F. Docherty
Cause: 28:1345 Foreclosure

Date Filed: 12/22/2025
Jury Demand: Plaintiff
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Federal Question

### Plaintiff

**Douglas Kaltved**
*the homeowners who still live at 15581
Iodine Street NW, Ramsey, Minnesota*

represented by **Douglas Kaltved**
15581 Iodine Street NW
Ramsey, MN 55303
PRO SE

### Plaintiff

**Jenna Kaltved**
*the homeowners who still live at 15581
Iodine Street NW, Ramsey, Minnesota*

represented by **Jenna Kaltved**
15581 Iodine Street NW
Ramsey, MN 55303
Email: ███████
PRO SE

V.

### Defendant

**Brad Wise**
*individually and as Sheriff of Anoka County*

represented by **Jason J Stover**
Anoka County Attorney's Office
2100 Third Avenue
Ste 720
Anoka, MN 55303
763-324-5550
Email: jason.stover@anokacountymn.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah Christenson**
Anoka County Attorney's Office
Anoka
2100 Third Avenue, Suite 720
55303
Anoka, MN 55303
763-324-5484
Email:
leah.christenson@anokacountymn.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lucas Christoffersen**
*individually (Deputy Sheriff who executed sale)*

represented by **Jason J Stover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah Christenson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Richard Kreyer**
*individually and as Civil Process Supervisor, Anoka County Sheriff's Office*

represented by **Jason J Stover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah Christenson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wilford, Geske & Cook, P.A.**

represented by **M Gregory Simpson**
Meagher & Geer, P.L.L.P.
33 South Sixth Street.
Suite 4300
Minneapolis, MN 55402
612-337-9672
Fax: 612-338-8384
Email: gsimpson@meagher.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan K. Seavey**
Meagher & Geer, PLLP
33 South Sixth Street
Ste 4300
Minneapolis, MN 55402
612-338-0661
Fax: 612-338-8384
Email: mseavey@meagher.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mackenzie Eichen**
*individually (AmeriHome employee who signed Assignment of Mortgage as Vice President of MERS)*

represented by **Brian Gravely**
Meagher & Geer, PLLP
33 South SIxth Street
Suite 4300
Minneapolis, MN 55402
612-347-9180
Fax: 612-338-8384

Email: bgravely@meagher.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Webb**                                    represented by  **Natalia S. Kruse**
*individually (AmeriHome Vice President*                         Husch Blackwell LLP
*who executed Notice of Pendency and*                            80 South Eighth Street
*Power of Attorney)*                                             Suite 2800
                                                                 Minneapolis, MN 55402
                                                                 612-852-2700
                                                                 Fax: 612-852-2701
                                                                 Email: natalia.kruse@huschblackwell.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Amerihome Mortgage Company, LLC**               represented by  **Margaret Ann Santos**
                                                                 Hinshaw & Culbertson LLP
                                                                 250 Nicollet Mall
                                                                 Suite 1150
                                                                 Minneapolis, MN 55401
                                                                 612-333-3434
                                                                 Fax: 612-334-8888
                                                                 Email: asantos@hinshawlaw.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**ServiceMac, LLC**                               represented by  **Margaret Ann Santos**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Cenlar FSB (subservicer)**                      represented by  **Natalia S. Kruse**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**Federal National Mortgage Association**
**(Fannie Mae)**

**Defendant**

**Mortgage Electronic Registration**
**Systems, Inc. (MERS)**

**Defendant**

**Onward Financing, LLC**                         represented by  **Shaun D Redford**
                                                                 Redford Law PA
                                                                 7201 Ohms Lane, Suite 210
                                                                 Edina, MN 55439

952-224-3644

Email: shaun@redfordlaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Doe 1-10**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/22/2025 | 1 | COMPLAINT against Amerihome Mortgage Company, LLC, Cenlar FSB (subservicer), Lucas Christoffersen, John Doe 1-10, Mackenzie Eichen, Federal National Mortgage Association (Fannie Mae), Richard Kreyer, Mortgage Electronic Registration Systems, Inc. (MERS), Onward Financing, LLC, ServiceMac, LLC, Jason Webb, Wilford, Geske & Cook, P.A., Brad Wise filed by Jenna Kaltved, Douglas Kaltved. Case assigned to Judge Nancy E. Brasel per 3rd/4th Master list, referred to Magistrate Judge John F. Docherty. (Attachments: # 1 Civil Cover Sheet) (kt) Modified text on 12/23/2025 (kt). Document QC'd on 2/10/2026 (ACH). (Entered: 12/23/2025) |
| 12/22/2025 | 2 | EXHIBIT INDEX re 1 Complaint filed by Douglas Kaltved, Jenna Kaltved. (Attachments: # 1 Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit R-1, # 19 Exhibit R-2, # 20 Exhibit R-3, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V, # 25 Exhibit W)(kt) Document QC'd on 2/10/2026 (ACH). (Entered: 12/23/2025) |
| 12/22/2025 | 3 | MOTION for Temporary Restraining Order - Expedited Handling Requested, MOTION for Preliminary Injunction - Expedited Handling Requested filed by Douglas Kaltved, Jenna Kaltved. (kt) Document QC'd on 2/10/2026 (ACH). (Entered: 12/23/2025) |
| 12/22/2025 | 4 | EXHIBITS A-I re 3 MOTION for Temporary Restraining Order - Expedited Handling Requested MOTION for Preliminary Injunction - Expedited Handling Requested filed by Douglas Kaltved, Jenna Kaltved.(kt) Document QC'd on 2/10/2026 (ACH). (Entered: 12/23/2025) |
| 12/23/2025 | 5 | RECEIPT number 400010511 in the amount of $405 issued to Jenna Katved. (kt) (Entered: 12/23/2025) |
| 12/23/2025 | 6 | Summons Issued as to Amerihome Mortgage Company, LLC, Cenlar FSB (subservicer), Lucas Christoffersen, Mackenzie Eichen, Federal National Mortgage Association (Fannie Mae), Richard Kreyer, ServiceMac, LLC, Jason Webb, Wilford, Geske & Cook, P.A., Brad Wise. (kt) cc: Kaltveds with Service Information Sheet. (kt) Modified text on 12/23/2025 (MMP). (Entered: 12/23/2025) |
| 12/23/2025 | 7 | Summons Issued as to John Doe 1-10, Mortgage Electronic Registration Systems, Inc. (MERS), Onward Financing, LLC. (kt)cc: Kaltveds with Service Information Sheet. (kt) (Entered: 12/23/2025) |
| 12/31/2025 | 8 | (Text-Only) ORDER. The Court shall hold a status conference with the parties on the pending case and Motion for TRO after the defendants have been served the filings in this case. Ordered by Judge Nancy E. Brasel on 12/31/2025. (KMW) (Entered: 12/31/2025) |
| 01/22/2026 | 9 | NOTICE of Appearance by Leah Christenson on behalf of Lucas Christoffersen, Richard Kreyer, Brad Wise. (Christenson, Leah) (Entered: 01/22/2026) |

| 01/22/2026 | 10 | ANSWER to Complaint filed by Lucas Christoffersen, Richard Kreyer, Brad Wise. (Christenson, Leah) (Entered: 01/22/2026) |
| 01/23/2026 | 11 | AFFIDAVIT of Service by Lucas Christoffersen, Richard Kreyer, Brad Wise re 10 Answer to Complaint (Christenson, Leah) (Entered: 01/23/2026) |
| 01/26/2026 | 12 | ANSWER to Complaint filed by Wilford, Geske & Cook, P.A.. (Simpson, M) (Entered: 01/26/2026) |
| 01/26/2026 | 13 | **RULE 7.1 DISCLOSURE STATEMENT.** There is no parent corporation, publicly held corporation owning 10 percent or more of its stock, or any subsidiaries to report for Wilford, Geske & Cook, P.A.. (Seavey, Megan) (Entered: 01/26/2026) |
| 01/27/2026 | 14 | NOTICE of Appearance by Megan K. Seavey on behalf of Wilford, Geske & Cook, P.A.. (Seavey, Megan) (Entered: 01/27/2026) |
| 01/28/2026 | 15 | ANSWER to Complaint filed by Onward Financing, LLC. (Redford, Shaun) (Entered: 01/28/2026) |
| 01/28/2026 | 16 | **RULE 7.1 DISCLOSURE STATEMENT.** There is a wholly owned subsidiary for Onward Financing, LLC. The wholly-owned subsidiary is Onward Enterprises, LLC(Redford, Shaun) Modified text on 1/28/2026 (MMP). (Entered: 01/28/2026) |
| 01/28/2026 | 17 | NOTICE of Appearance by Shaun D Redford on behalf of Onward Financing, LLC. (Redford, Shaun) (Entered: 01/28/2026) |
| 01/28/2026 | 18 | AFFIDAVIT of Service by Onward Financing, LLC re 15 Answer to Complaint (Redford, Shaun) (Entered: 01/28/2026) |
| 02/10/2026 | 19 | Clerk's Notice of APPLICATION FOR PRO SE LITIGANT TO FILE ELECTRONICALLY. Jenna Kaltved is GRANTED e-filing privileges in this case. Pursuant to F.R.Cv.P. Rule 5 and 7(d), Jenna Kaltved has consented to electronic service and has agreed to waive service by other means for all subsequent filings in this case, except when electronic service is not allowed under the rules. (SAD) (Entered: 02/10/2026) |
| 02/10/2026 | 20 | MOTION to Dismiss/General *DEFENDANTS AMERIHOME AND SERVICEMACS MOTION TO DISMISS* filed by Amerihome Mortgage Company, LLC, ServiceMac, LLC. (Santos, Margaret) (Entered: 02/10/2026) |
| 02/10/2026 | 21 | NOTICE OF HEARING ON MOTION 20 MOTION to Dismiss/General *DEFENDANTS AMERIHOME AND SERVICEMACS MOTION TO DISMISS : DEFENDANTS AMERIHOME AND SERVICEMACS NOTICE OF HEARING ON MOTION TO DISMISS* Date and time to be determined. (Santos, Margaret) (Entered: 02/10/2026) |
| 02/10/2026 | 22 | MEMORANDUM in Support re 20 MOTION to Dismiss/General *DEFENDANTS AMERIHOME AND SERVICEMACS MOTION TO DISMISS DEFENDANTS AMERIHOME AND SERVICEMACS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS* filed by Amerihome Mortgage Company, LLC, ServiceMac, LLC. (Attachments: # 1 Exhibit(s) Exhibit 1, # 2 Exhibit(s) Exhibit 2, # 3 LR7.1/LR72.2 Word Count Compliance Certificate Word Count)(Santos, Margaret) (Entered: 02/10/2026) |
| 02/10/2026 | 23 | MEET and CONFER STATEMENT re 20 Motion to Dismiss/General filed by Amerihome Mortgage Company, LLC, ServiceMac, LLC.(Santos, Margaret) (Entered: 02/10/2026) |
| 02/10/2026 | 24 | PROPOSED ORDER TO JUDGE re [PROPOSED] ORDER GRANTING DEFENDANTS AMERIHOME AND SERVICEMACS MOTION TO DISMISS 21 |

| | | |
|---|---|---|
| | | Notice of Hearing on Motion, 20 Motion to Dismiss/General, 23 Meet and Confer Statement, 22 Memorandum in Support of Motion,. (Santos, Margaret) (Entered: 02/10/2026) |
| 02/10/2026 | 25 | SUMMONS Returned Executed by Jenna Kaltved. Wilford, Geske & Cook, P.A. served on 1/5/2026, answer due 1/26/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 26 | SUMMONS Returned Executed by Jenna Kaltved. Lucas Christoffersen served on 1/5/2026, answer due 1/26/2026; Richard Kreyer served on 1/5/2026, answer due 1/26/2026; Brad Wise served on 1/5/2026, answer due 1/26/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 27 | SUMMONS Returned Executed by Jenna Kaltved. ServiceMac, LLC served on 1/20/2026, answer due 2/10/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 28 | SUMMONS Returned Executed by Jenna Kaltved. Onward Financing, LLC served on 1/8/2026, answer due 1/29/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 29 | SUMMONS Returned Executed by Jenna Kaltved. Mackenzie Eichen served on 1/30/2026, answer due 2/20/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 30 | SUMMONS Returned Executed by Jenna Kaltved. Jason Webb served on 2/7/2026, answer due 3/2/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 31 | SUMMONS Returned Executed by Jenna Kaltved. Amerihome Mortgage Company, LLC served on 1/20/2026, answer due 2/10/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 32 | SUMMONS Returned Executed by Jenna Kaltved. Mortgage Electronic Registration Systems, Inc. (MERS) served on 1/26/2026, answer due 2/17/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 33 | SUMMONS Returned Executed by Jenna Kaltved. Federal National Mortgage Association (Fannie Mae) served on 2/3/2026, answer due 2/24/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 34 | SUMMONS Returned Executed by Jenna Kaltved. Cenlar FSB (subservicer) served on 1/30/2026, answer due 2/20/2026. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/10/2026 | 35 | Return of Service Unexecuted *01/08/2026* not served on MERS, Cenlar, ServiceMac, AmeriHome, filed by Jenna Kaltved. (Kaltved, Jenna) (Entered: 02/10/2026) |
| 02/11/2026 | 36 | First MOTION *deem service acceptable on Fannie Mae, MERS, Cenlar* re 33 Summons Returned Executed, 34 Summons Returned Executed, 35 Return of Service Unexecuted, 32 Summons Returned Executed filed by Jenna Kaltved. (Kaltved, Jenna) (Entered: 02/11/2026) |
| 02/11/2026 | 37 | Emergency MOTION for Preliminary Injunction *and TRO and Toll Redemption Period* - Expedited Handling Requested filed by Jenna Kaltved. DOCUMENTS ATTACHED IN ERROR. TO BE REFILED//(Attachments: # 1 Exhibit(s) Notice to Eviction Attorney to Stay Eviction pending federal case and Proof of Bona Fide Tenant with rights, # 2 Exhibit(s) Proposed Order Granting TRO/PI/Toll Redemption Period)(Kaltved, Jenna) Modified text on 2/12/2026 (ACH). (Entered: 02/11/2026) |
| 02/12/2026 | 38 | First AFFIDAVIT of Jenna Kaltved in SUPPORT OF 37 Emergency MOTION for Preliminary Injunction *and TRO and Toll Redemption Period* - Expedited Handling Requested, 3 MOTION for Temporary Restraining Order - Expedited Handling Requested MOTION for Preliminary Injunction - Expedited Handling Requested filed by Jenna Kaltved. (Attachments: # 1 Exhibit(s) Eviction Complaint, Answer with Affirmative |

| | | Defenses, State Docket, # 2 Exhibit(s)Notice to Eviction Attorney)(Kaltved, Jenna) (Entered: 02/12/2026) |
|---|---|---|
| 02/13/2026 | 39 | AFFIDAVIT of Service by Amerihome Mortgage Company, LLC, ServiceMac, LLC re 21 Notice of Hearing on Motion, 20 MOTION to Dismiss/General *DEFENDANTS AMERIHOME AND SERVICEMACS MOTION TO DISMISS*, 24 Proposed Order to Judge - Other, 23 Meet and Confer Statement, 22 Memorandum in Support of Motion, *Affidavit of Service by E-Mail - Douglas and Jenna Kaltved* (Santos, Margaret) (Entered: 02/13/2026) |
| 02/13/2026 | 40 | (Text-Only) ORDER. The Court DENIES the Plaintiffs' request to handle the motion for preliminary injunction (ECF No. 37) on an expedited basis. The parties shall follow the local rules regarding the briefing schedule. ORDER/NOTICE TO ATTORNEY. Ordered by Judge Nancy E. Brasel on 2/13/2026.(LC2) (Entered: 02/13/2026) |
| 02/14/2026 | 41 | Emergency MOTION for Temporary Restraining Order *to enjoin Eviction Case (hearing Feb 18)* - Expedited Handling Requested filed by Jenna Kaltved. (Kaltved, Jenna) (Entered: 02/14/2026) |
| 02/14/2026 | 42 | Emergency AFFIDAVIT of Jenna Kaltved in SUPPORT OF 41 Emergency MOTION for Temporary Restraining Order *to enjoin Eviction Case (hearing Feb 18)* - Expedited Handling Requested filed by Jenna Kaltved.(Kaltved, Jenna) (Entered: 02/14/2026) |
| 02/14/2026 | 43 | EXHIBIT *B (fax to eviction attorney)* re 41 Emergency MOTION for Temporary Restraining Order *to enjoin Eviction Case (hearing Feb 18)* - Expedited Handling Requested filed by Jenna Kaltved.(Kaltved, Jenna) (Entered: 02/14/2026) |
| 02/14/2026 | 44 | EXHIBIT *A (eviction complaint, docket, answer with affirmative defenses)* re 41 Emergency MOTION for Temporary Restraining Order *to enjoin Eviction Case (hearing Feb 18)* - Expedited Handling Requested filed by Jenna Kaltved.(Kaltved, Jenna) (Entered: 02/14/2026) |
| 02/18/2026 | 45 | (Text-Only) ORDER. The Court DENIES the Plaintiffs' request to handle the motion for temporary restraining order (ECF No. 41 ) on an expedited basis. Defendants' response to the motion is due 3/10/26 and Plaintiff's reply brief is due 3/24/26. The Court will handle the motion on the paper filings. Ordered by Judge Nancy E. Brasel on 2/18/2026. (KMW) (Entered: 02/18/2026) |
| 02/18/2026 | 46 | NOTICE of Appearance by Natalia S. Kruse on behalf of Cenlar FSB (subservicer). (Kruse, Natalia) (Entered: 02/18/2026) |
| 02/18/2026 | 47 | MOTION for Extension of Time to File Answer re 1 Complaint,, filed by Cenlar FSB (subservicer). (Kruse, Natalia) (Entered: 02/18/2026) |
| 02/18/2026 | 48 | PROPOSED ORDER TO JUDGE re 47 MOTION for Extension of Time to File Answer re 1 Complaint,, filed by Cenlar FSB (subservicer).(Kruse, Natalia) (Entered: 02/18/2026) |
| 02/18/2026 | 49 | MEET and CONFER STATEMENT re 47 Motion for Extension of Time to File Answer filed by Cenlar FSB (subservicer).(Kruse, Natalia) (Entered: 02/18/2026) |
| 02/18/2026 | 50 | **RULE 7.1 DISCLOSURE STATEMENT.** Parent corporation, publicly held corporation owning 10 percent or more of its stock, or subsidiary reported for Cenlar FSB (subservicer). (Kruse, Natalia) (Entered: 02/18/2026) |
| 02/20/2026 | 51 | NOTICE of Appearance by Brian Gravely on behalf of Mackenzie Eichen. (Gravely, Brian) (Entered: 02/20/2026) |
| 02/20/2026 | 52 | *Defendant Mackenzie Eichen's* ANSWER to Complaint filed by Mackenzie Eichen. (Gravely, Brian) (Entered: 02/20/2026) |

| 02/20/2026 | 53 | **RULE 7.1 DISCLOSURE STATEMENT.** There is no parent corporation, publicly held corporation owning 10 percent or more of its stock, or any subsidiaries to report for Mackenzie Eichen. (Gravely, Brian) (Entered: 02/20/2026) |
|---|---|---|
| 02/23/2026 | 54 | NOTICE OF FILING BANKRUPTCY by Jenna Kaltved (Kaltved, Jenna) (Entered: 02/23/2026) |
| 02/26/2026 | 55 | NOTICE of Appearance by Natalia S. Kruse on behalf of Jason Webb. (Kruse, Natalia) (Entered: 02/26/2026) |
| 02/26/2026 | 56 | MOTION for Extension of Time to File Answer re 1 Complaint,, filed by Jason Webb. (Kruse, Natalia) (Entered: 02/26/2026) |
| 02/26/2026 | 57 | PROPOSED ORDER TO JUDGE re 56 MOTION for Extension of Time to File Answer re 1 Complaint,, filed by Jason Webb.(Kruse, Natalia) (Entered: 02/26/2026) |
| 02/26/2026 | 58 | MEET and CONFER STATEMENT re 56 Motion for Extension of Time to File Answer filed by Jason Webb.(Kruse, Natalia) (Entered: 02/26/2026) |
| 03/02/2026 | 59 | (Text-Only) ORDER granting 47 Motion for Extension of Time to Answer: Defendant Cenlar FSB's Motion for Extension is GRANTED. Defendant Cenlar FSB shall answer or otherwise respond to the Complaint on or before **March 20, 2026**. Ordered by Magistrate Judge John F. Docherty on 3/2/2026. (CRD) (Entered: 03/02/2026) |
| 03/02/2026 | 60 | Plaintiffs' Opposition to Defendants re 20 MOTION to Dismiss/General filed by Jenna Kaltved (Kaltved, Jenna) Modified text on 3/3/2026 (MMP). (Entered: 03/02/2026) |
| 03/03/2026 | 61 | *Application for Entry of Default Against FNMA and MERS* filed by Jenna Kaltved re 33 Summons Returned Executed, 32 Summons Returned Executed. (Kaltved, Jenna) Modified text on 3/4/2026 (MMP). (Entered: 03/03/2026) |
| 03/03/2026 | 62 | EXHIBIT List re 61 Notice (Other) filed by Jenna Kaltved. (Attachments: # 1 Exhibit(s) Exhibit A - MERS Service Affidavit and green card Docket 32, # 2 Exhibit(s) Exhibit B - FNMA Service Affidavit and green card Docket 33)(Kaltved, Jenna) (Entered: 03/03/2026) |
| 03/04/2026 | 63 | (Text-Only) NOTICE: A Status Conference is scheduled for 3/16/2026 at 2:30 PM by Video Conference (no courtroom) before Judge Nancy E. Brasel. The parties shall discuss how the case may be impacted by notice of bankruptcy filing made by the plaintiff (ECF No. 54 ). A Zoom link shall be provided to all parties with a valid email address on the docket. Otherwise parties may join by phone by dialing 1-669-254-5252 Meeting ID: 160 331 4694 Passcode: 623558. (KMW) (Entered: 03/04/2026) |
| 03/04/2026 | 64 | MEMORANDUM in Opposition re 37 Emergency MOTION for Preliminary Injunction *and TRO and Toll Redemption Period* - <span style="color:red">Expedited Handling Requested</span> filed by Amerihome Mortgage Company, LLC, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems, Inc. (MERS), ServiceMac, LLC. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 LR7.1/LR72.2 Word Count Compliance Certificate Word Count Compliance Certificate)(Santos, Margaret) (Entered: 03/04/2026) |
| 03/05/2026 | 65 | LETTER from U.S. District Court, Clerk's Office to Jenna Kaltved and Douglas Kaltved. (MMP) (Entered: 03/05/2026) |
| 03/05/2026 | 66 | ORDER granting in part and denying in part 36 Motion to Deem Service Acceptable. Proper service due by 3/19/2026. (Written Opinion) Signed by Magistrate Judge John F. Docherty on 3/5/2026. (LC2) (Entered: 03/05/2026) |

| 03/05/2026 | 67 | MEET-AND-CONFER STATEMENT filed by Jenna Kaltved re 3 MOTION for Temporary Restraining Order - *Expedited Handling Requested* MOTION for Preliminary Injunction - *Expedited Handling Requested* *Meet-and-Confer Statement Regarding Motions for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 3 & 41)* (Attachments: # 1 Exhibit(s) Exhibit A - Sheriff Meet and Confer, # 2 Exhibit(s) Exhibit B - Eichen Meet and Confer, # 3 Exhibit(s) Exhibit C - Onward Meet and Confer, # 4 Exhibit(s) Exhibit D - Cenlar & Webb Meet and Confer, # 5 Exhibit(s) Exhibit E - AmeriHome, ServiceMac, MERS, FNMA Meet and Confer, # 6 Exhibit(s) Exhibit F - Wilford, Geske & Cook Meet and Confer)(Kaltved, Jenna) Modified text on 3/9/2026 (MMP). (Entered: 03/05/2026) |
| 03/06/2026 | 68 | AFFIDAVIT of Service by Amerihome Mortgage Company, LLC, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems, Inc. (MERS), ServiceMac, LLC re 64 Memorandum in Opposition to Motion,, *Affidavit of Service by E-Mail* (Santos, Margaret) (Entered: 03/06/2026) |
| 03/09/2026 | 69 | MEMORANDUM in Opposition re 41 Emergency MOTION for Temporary Restraining Order *to enjoin Eviction Case (hearing Feb 18)* - *Expedited Handling Requested DEFENDANTS AMERIHOME, SERVICEMAC, MERS, AND FANNIE MAES MEMORANDUM OF LAW OPPOSING PLAINTIFFS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER TO ENJOIN STATE EVICTION PROCEEDINGS* filed by Amerihome Mortgage Company, LLC, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems, Inc. (MERS), ServiceMac, LLC. (Attachments: # 1 Exhibit(s) Exhibit 1, # 2 Exhibit(s) Exhibit 2, # 3 LR7.1/LR72.2 Word Count Compliance Certificate)(Santos, Margaret) (Entered: 03/09/2026) |
| 03/09/2026 | 70 | (Text-Only) ORDER granting 56 Motion for Extension of Time to Answer: Defendant Jason Webb's Motion for Extension is GRANTED. Defendant Jason Webb shall answer or otherwise respond to the Complaint on or before **March 20, 2026**. Ordered by Magistrate Judge John F. Docherty on 3/9/2026. (CRD) (Entered: 03/09/2026) |
| 03/09/2026 | 71 | AFFIDAVIT of Service by Amerihome Mortgage Company, LLC, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems, Inc. (MERS), ServiceMac, LLC re 69 Memorandum in Opposition to Motion,, *AFFIDAVIT OF SERVICE BY E-MAIL* (Santos, Margaret) (Entered: 03/09/2026) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/10/2026 09:27:49 | | |
| **PACER Login:** | kdobie55 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:25-cv-04755-NEB-JFD |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Chapter 13
Case No. 26-40537 KAC

Jenna Ione Kaltved
*fka* Jenna Ione Thompson,

MEMORANDUM OF LAW

Debtor.

**FACTS**

Movant holds a mortgage and sheriff's certificate of sale on real property formerly owned by the debtor.  The facts are detailed in the Movant's motion and are incorporated herein.

**ARGUMENT**

**I.    Movant Is Entitled to Relief from Stay for Cause under Section 362(d)(1) and 362(d)(2) Because the Debtor No Longer Has Any Ownership Interest in the Property.**

11 U.S.C. § 362(d) provides that on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under 11 U.S.C. § 362(a) of this Section: (1) for cause, including lack of adequate protection of an interest in property of such party in interest; and (2) where the debtor has no equity and the property is not necessary for an effective reorganization.

The standard for "cause" under § 362(d)(1) is broad and may extend beyond one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985). Most often, cause is shown by a debtor's failure to afford adequate protection of a secured creditor's interest in its security. *Id.* Where the creditor has established a prima facie cause under Section 362(d)(1), the debtor has the burden of establishing that the creditor's interest is or will be adequately protected. *Id.* "The debtor must affirmatively propose the method by which it will afford adequate protection and the Court must then determine the

adequacy of the debtor's proposal." *Id.* The debtor failed to make the regular mortgage payments under the mortgage and the property was sold by the sheriff to AmeriHome Mortgage Company LLC to satisfy the amount due. (Dobie Decl. ¶ 5.) AmeriHome assigned its interest to Fannie Mae. (*Id.* at ¶ 6.) This is cause for relief from stay to allow Fannie Mae to pursue and continue the pending eviction action in Anoka County District Court. The foreclosure and expiration of the redemption period is also grounds for relief from stay under Section 362(d)(2) because the debtor no longer has any equity in the property and the property is therefore no longer necessary for any reorganization.

## CONCLUSION

Movant respectfully requests that the Court grant Movant relief from the automatic stay of 11 U.S.C. § 362(a).

Dated:  March 10, 2026

LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P.

By: /s/ Kevin T. Dobie
    Kevin T. Dobie, #388322
    Attorney for Movant
    4500 Park Glen Road, #300
    Minneapolis, MN 55416
    (952) 925-6888
    kevin@minnesotamortgagelaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Jenna Ione Kaltved
*fka* Jenna Ione Thompson,

UNSWORN DECLARATION
FOR PROOF OF SERVICE

Debtor.

Chapter 13, Case No. 26-40537 KAC

I, Kaye M. Jensen, employed on this date by LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P., attorneys licensed to practice law in this court, with office address of Suite 300, 4500 Park Glen Road, Minneapolis, Minnesota 55416, declares that on March 10, 2026, I served the annexed Notice of Hearing and Motion for Relief from Automatic Stay upon each of the entities named below by mailing to them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Minneapolis, Minnesota, addressed to each of them as follows:

Jenna Ione Kaltved
15581 Iodine Street Northwest
Ramsey, Minnesota 55303

and delivered by email notification under CM/ECF on the day efiled with the court to each of them as follows:

Office of the United States Trustee

Kyle Carlson, Chapter 13 Trustee

Pro Se

/s/ Kaye M. Jensen
Kaye M. Jensen

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

|  | Case No. 26-40537 KAC |
|---|---|

In re:

Chapter 13

Jenna Ione Kaltved
*fka* Jenna Ione Thompson,

Debtor.

---

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

This case is before the court on the motion of Federal National Mortgage Association for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED**:

1.      The motion for relief from the automatic stay is granted as follows.

2.      The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable non-bankruptcy law with respect to the debtor and the following property:

    LOT 6, BLOCK 2, WILDLIFE SANCTUARY SECOND ADDITION, ANOKA COUNTY, Minnesota.

3.      Notwithstanding Fed. R. Bankr. P. 4001(a)(4), this order is effective immediately.

Dated: _____        _____

                                              United States Bankruptcy Judge